JAMES J. MURRAY AND MARY P. MURRAY v. ALLSTATE INSURANCE COMPANY

No. 8014SC657

(Filed 3 March 1981)

**Damages § 12.1-- punitive damages – no allegations of aggravated conduct**

In an action by plaintiffs to recover under an insurance policy issued by defendants which provided coverage for damage to plaintiffs' property caused by lightning where plaintiffs alleged that defendant elected to repair the damage to their property caused by the lightning, that defendant's attempted repair of their property caused additional damage, that defendant refused to correct the improper work, and that plaintiffs were entitled to punitive damages, plaintiffs' complaint was sufficient to set out a separate tort claim for additional damage done to their property so that they were entitled to recover such actual damage as they could prove was caused by defendant's negligence, not limited to defendant's contract liability under the insurance policy, but plaintiffs did not establish a claim for punitive damages where they did not allege that defendant committed an intentional wrong against them; though the complaint made it clear that plaintiffs were proceeding on a negligence theory, they did not allege that defendant's negligence was wanton, willful, or gross; and plaintiffs' tort claim did not contain any of the elements of insult, indignity, malice, oppression, or malicious, unlawful, willful, wanton, or reckless conduct on defendant's part as would justify plaintiffs' claim for punitive damages.

APPEAL by plaintiffs from *Lee, Judge.* Order entered 20 March 1980 in Superior Court, DURHAM County. Heard in the Court of Appeals 3 February 1981.

Plaintiffs brought this action to recover actual and punitive damages from defendant based on breach of insurance contract. In their complaint plaintiffs alleged that their property was damaged by lightning prior to July 1975 and that at that time there was in effect an insurance policy issued by defendant to plaintiffs which provided, *inter alia,* coverage for damage to the property caused by lightning. Pursuant to the policy's provisions, defendant elected to repair the damage to plaintiffs' property caused by the lightning, so as to restore it to its condition before the damage. Plaintiffs further alleged that the defendant's attempted repair of their property, performed negligently, improperly and incompletely by defendant's agent, D.W. Ward Construction Company, caused additional damage to the property. In paragraphs ten and eleven of their complaint, plaintiffs alleged respectively (a) that as a result of defendant's breach plaintiffs have sustained "extreme and grievous mental and emotional distress and suffering," and (b) that once defendant learned of the negligent repair performed by its agent, defendant, in bad faith, refused to correct the improper work and attempted, in bad faith, to persuade plaintiffs that plaintiffs' only recourse under the contract was to enter into an appraisal procedure. Based on these allegations, plaintiffs sought $50,000.00 in punitive damages, in addition to compensatory damages.

In its answer, defendant moved to dismiss the claim for punitive damages, and moved to strike the aforementioned portions of paragraphs ten and eleven of plaintiffs' complaint relating to plaintiffs' emotional distress and defendant's bad faith, as well as plaintiffs' claim for punitive damages. The trial judge granted both motions. Although initially giving notice of appeal, plaintiffs later withdrew the appeal and moved the trial court for permission to amend their complaint. This motion was granted.

Plaintiffs amended their complaint by adding a new paragraph thirteen in which they alleged that once defendant learned of the negligent repair performed by its agent, defendant, in bad faith, refused to pay for or correct the improper work and fraudulently misrepresented plaintiffs' contractual rights to plaintiffs. Defendant's motions to strike this amendment to the complaint and to dismiss plaintiffs' claim for punitive damages were granted. Plaintiffs have appealed from this order.

*Spears, Barnes, Baker & Hoof, by Alexander H. Barnes, for plaintiff appellants.*

*Haywood, Denny & Miller, by George W. Miller, Jr., for defendant appellee.*

WELLS, Judge.

The question presented in this appeal is whether plaintiffs have stated a cause of action upon which they can recover punitive damages. To put the question in clear perspective, we quote the pertinent paragraphs from plaintiffs' complaint as amended:

7. That in or about September 1975 the Defendant, through its agent, D.W. Ward, trading as D.W. Ward Construction Company, began work upon the repair and restoration of Plaintiffs' said property.

8. In so undertaking the work of repairing and replacing Plaintiffs' property, the Defendant owed to Plaintiffs the duty to effect such repair and restoration in a good and proper workmanlike manner, within a reasonable time, without causing further damage to Plaintiffs' said property.

9. That the Defendant, through its said agent, beginning in or about September 1975 and continuing through about May 1976, attempted to repair and restore the Plaintiffs' said property but failed to complete said repair work and failed to accomplish such repair work and restoration work in a good and proper workmanlike manner within a reasonable time but, on the contrary, performed the repair work that it did attempt in a careless, negligent and improper workmanlike manner, without completing the same, such that the Plaintiffs' said property was not properly and fully repaired, such that Defendant caused additional and further damage to Plaintiffs' said property and such that Plaintiffs' said property has been placed, at Defendant's hands, in a much worse condition than it was in before Defendant attempted to repair the same.

. . .

13. That after the Defendant Insurance Company had investigated Plaintiffs' claim that Defendant's agent had

improperly repaired Plaintiffs' property and determined that Plaintiffs' claim was valid and after Defendant Insurance Company had determined that the only way to correct such improper work was to tear out and redo the defective work at a cost (when added to $9,000.00 it had already paid for such improper work) of more than $14,000.00, the Defendant Insurance Company unwarrantedly refused to pay for or correct such improper work, in bad faith, with intent to cause Plaintiffs further damage, and unfairly and fraudulently misrepresented to and attempted to convice [*sic*] the Plaintiffs that the Defendant Insurance Company was responsible to pay no more than its policy limit of $14,000.00 and, on another occasion, fraudulently misrepresented to and attempted to convince the Plaintiffs that Plaintiffs had no recourse but to enter into an appraisal procedure contained in its insurance policy when it knew that such procedure was not applicable after it had elected to repair and restore Plaintiffs' property and had done such improperly.

Plaintiffs contend that their complaint alleges a tort accompanying a breach of contract, sufficient to establish a claim for punitive damages. Defendant argues that the complaint rests upon an alleged breach by defendant of the terms of the contract of insurance.

Defendant did not mention or refer to G.S. 1A-1, Rule 12(b)(6) of the Rules of Civil Procedure in its motion to dismiss. It does not appear that the trial court considered any matters outside the pleadings, and we therefore treat defendant's motion as a Rule 12(b)(6) motion. Such a motion tests the legal sufficiency of plaintiffs' claim for punitive damages. Plaintiffs' claim should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiffs could prove no set of facts in support of their claim which would entitle them to the relief sought. The rule generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery. For purposes of ruling on a motion to dismiss, the well-pleaded material allegations of the complaint are taken as admitted. *Cable, Inc. v. Finnican*, 46 N.C. App. 87, 90, 264 S.E. 2d 138, 139 (1980). G.S. 1A-1, Rule 9(b) requires, however, that circumstances constituting fraud must be stated with particularity. Using these generally accepted

rules as to the sufficiency of pleadings, we now examine whether plaintiffs' amended complaint passes muster as to the claim for punitive damages.

The general rule is that punitive damages are not recoverable for breach of contract, except where the breach is of a contract to marry. *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E. 2d 611, 621 (1979); *Newton v. Insurance Co.*, 291 N.C. 105, 111, 229 S.E. 2d 297, 301 (1976). When the breach of contract also constitutes or is accompanied by identifiable tortious acts, the tort committed may be grounds for recovery of punitive damages. *Stanback, supra*. In order to support a claim for punitive damages, however, the identifiable tortious conduct must be accompanied by or partake of some element of aggravation. *Newton, supra*, at 112, 229 S.E. 2d at 301. While plaintiffs have sufficiently alleged that defendant's negligent acts inflicted *further* damage to their property, *i.e.*, a tort, the question of aggravation remains.

The right to punitive damages has been the subject of numerous decisions of our appellate courts. Because it is an aspect of the law in which human behavior impacts in various and unpredictable ways upon the feelings and sensibilities of others, it is not surprising that the cases contain an interesting collection of expressions of the public policy which underlies the right to punitive damages. In *Cotton v. Fisheries Co.*, 181 N.C. 151, 106 S.E. 487 (1921), Justice (later Chief Justice) Stacy stated the rule as follows:

> Punitive damages, sometimes called smart money, are allowed in cases where the injury is inflicted in a malicious, wanton, and reckless manner. The defendants' conduct must have been actually malicious or wanton, displaying a spirit of mischief towards the plaintiff, or of reckless and criminal indifference to his rights. When these elements are present, damages commensurate with the injury may be allowed by way of punishment to the defendants.

181 N.C. at 152, 106 S.E. at 488. *See also Baker v. Winslow*, 184 N.C. 1, 113 S.E. 570 (1922). Both *Cotton* and *Baker* were actions for slander and the claims for punitive damages were rooted in malice. In *Baker*, Justice Walker expanded upon the rule in *Cotton*, stating that punitive damages "are not to be allowed

unless there is an element of fraud, malice, gross negligence, insult, or other cause of aggravation in the act which causes the injury" and unless "the wrong is done willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." 184 N.C. at 5, 113 S.E. at 572.

The basic rules enunciated in *Cotton* and *Baker* were restated in *Swinton v. Realty Co.*, 236 N.C. 723, 73 S.E. 2d 785 (1953), *partly overruled on other grounds in Newton v. Insurance Co.*, *supra*, a case involving defendant's fraudulent misrepresentation to plaintiffs of the size of a parcel of land sold by defendant to plaintiffs, wherein plaintiffs recovered both compensatory and punitive damages. In denying plaintiffs' entitlement to punitive damages, the Court stated:

> We are inclined to the view that the facts in evidence here are not sufficient to warrant the allowance of punitive damages. There was no evidence of insult, indignity, malice, oppression or bad motive other than the same false representations for which they have received the amount demanded. Here fraud is not an accompanying element of an independent tort but the particular tort alleged.

236 N.C. at 727, 73 S.E. 2d at 788.

In *Newton*, the Court overruled *Swinton* to the extent that the rule stated in *Swinton* requires evidence of aggravation in addition to evidence of intentional wrongdoing. We do not believe the *Newton* modification of *Swinton* to be controlling here, for the reasons stated later in our opinion.

*Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955) involved a suit to recover loss to plaintiff's building caused by fire. Plaintiff sought both compensatory and punitive damages, alleging:

> "That by reason of the unlawful, wanton, wilful and gross negligent conduct of the defendant corporation and its agents and their failure to observe the rules and requirements of the National Electrical Code, and failure to observe the ordinance of the City of Lenoir, that this plaintiff is entitled to recover punitive damages of the defendant corporation in the amount of $50,000.00."

242 N.C. at 337, 88 S.E. 2d at 337. In denying plaintiff's claim for punitive damages, the Court stated:

> In our opinion, after a careful study of the complaint, the allegations of fact therein contained are insufficient to support an award for punitive damages. This action, according to the allegations of fact in the Complaint, is to recover for damages arising from the defendants' negligent default and omission and not from any *wilful or malicious conduct* on their part.

(Emphasis supplied.) 242 N.C. at 345, 88 S.E. 2d at 342.

These general principles or rules were restated and applied by our Supreme Court in *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E. 2d 797 (1976), a case involving a dispute over a lease of commercial real estate. Language found in the majority opinion in *Oestreicher* indicates that the Court interpreted plaintiff's evidence to show that the defendant was engaged in fraudulent and deceitful conduct, thus justifying plaintiff's claim for punitive damages. Chief Justice Sharp, in her dissent in *Oestreicher*, pointed out that by calling defendant's conduct "aggravated fraud" or referring to defendant's breach of the lease agreement as "willful", "intentional" and in "wanton disregard of the rights of plaintiff," plaintiff did not justify a claim for punitive damages, there being no evidence of insult, indignity, malice, oppression or bad motive other than those involving the breach of the lease agreement itself. 290 N.C. at 147-48, 225 S.E. 2d at 815.

*Newton, supra,* involved a claim for punitive damages based on defendant's "heedless, wanton, and oppressive conduct" in refusing to pay a claim for losses under the theft and burglary clauses of its insurance contract with defendant. While denying plaintiff's entitlement to punitive damages under the facts of that case, the Court included dicta in its opinion which complicates our task here. Because of its vital relevancy to this case, we quote at some length from the majority opinion in *Newton* as follows:

> We need not now decide whether a bad faith refusal to pay a justifiable claim by an insurer might give rise to punitive damages. No bad faith is claimed here, nor are any facts alleged from which a finding of bad faith could be

made. Insurer's knowledge that plaintiff was in a precarious financial position in view of his loss does not in itself show bad faith on the part of the insurer in refusing to pay the claim, or for that matter, that the refusal was unjustified. Had plaintiff claimed that after due investigation by defendant it was determined that the claim was valid and defendant nevertheless refused to pay or that defendant refused to make any investigation at all, and that defendant's refusals were in bad faith with an intent to cause further damage to plaintiff, a different question would be presented.

We are slow to impose upon an insurer liabilities beyond those called for in the insurance contract. To create exposure to such risks except for the most extreme circumstances would, we are certain, be detrimental to the consuming public whose insurance premiums would surely be increased to cover them.

On the other hand, because of the great disparity of financial resources which generally exists between insurer and insured and the fact that insurance companies, like common carriers and utilities, are regulated and clearly affected with a public interest, we recognize the wisdom of a rule which would deter refusals on the part of insurers to pay valid claims when the refusals are both unjustified and in bad faith. Punitive damages "have been allowed for a breach of duty to serve the public by a common carrier or other public utility. . . ." [Citation omitted.] Suffice it to say that we are not called upon here to adopt or reject such a rule.

291 N.C. at 115-16, 229 S.E. 2d at 303-4.

Plaintiffs argue that the foregoing language in *Newton* requires us to recognize and uphold the validity of their claim for punitive damages in this case. We do not agree. In this case, we do not reach the question posited by the Court in the above quoted portions of *Newton* for these reasons. *Newton* dealt with the question of the defendant insurance company's failure to pay a valid claim *under its contract of insurance. Cf. Shields v. Nationwide Mutual Fire Insurance Company,* 50 N.C. App. 355, 273 S.E. 2d 756 (1981). We do not have that question before us in this case. The reasonable inferences to be drawn from plain-

tiffs' complaint are that (1) defendant initially responded to plaintiffs' claim by attempting to make repairs, and (2) that defendant has "tendered" its contract limits in response to plaintiffs' claim for additional damages. What we have here is defendant's refusal to acknowledge or accept liability beyond its contract limits in response to plaintiffs' claim for damages *in tort*. Plaintiffs' "bad faith" allegations speak only to defendant's refusal to accept that liability. Plaintiffs have not alleged that defendant committed an intentional wrong against them. The complaint makes it clear that plaintiffs are proceeding on a negligence theory. They have not alleged that defendant's negligence was wanton, willful, or gross. We do not see in plaintiffs' tort claim any of the elements of insult, indignity, malice, oppression, or malicious, unlawful, willful, wanton, or reckless conduct on defendant's part as would justify plaintiffs' claim for punitive damages. Neither can we agree that plaintiffs' allegations that defendant fraudulently represented that its liability to them did not extend beyond its policy limits set out a separate claim for fraud to which punitive damages might attach. Defendant was in essence asserting a defense to plaintiffs' tort claim, and we see nothing fraudulent in such conduct.

We, therefore, hold that although plaintiffs have set out a separate tort claim for additional damage done to their property, so that plaintiffs are entitled to recover such actual damage as they can prove was caused by defendant's negligence, not limited to defendant's contract liability under the insurance policy, plaintiffs have not established a claim for punitive damages.

The underlying claim for punitive damages having been properly dismissed by the trial court, the supportive allegations of the complaint were properly stricken. *Newton, supra.*

The order of the trial court is

Affirmed.

Judges Arnold and Hill concur.