996 F.2d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Nathaniel DANIELS, Plaintiff-Appellee,
v.
NON-FLUID OIL EQUIPMENT COMPANY, LIMITED, Defendant & Third
Party Plaintiff-Appellant,
v.
GOUGH-ECON, INCORPORATED, Third Party Defendant-Appellee.
 No. 92-1740.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: June 3, 1993.
Decided: June 22, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., District Judge. (CA-91-2940-3)
 Charles E. Carpenter, Jr., Deborah L. Harrison, Michael A. Pulliam, Richardson, Plowden, Grier & Howser, P.A., Columbia, South Carolina, for Appellant.
 W. Howard Boyd, Jr., Ronald K. Wray, II, Gibbes & Clarkson, P.A., Greenville, South Carolina, for Appellees.
 D.S.C.
 AFFIRMED.
 Before WILKINSON and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Non-Fluid Oil Equipment Co., Ltd. (Non-Fluid Oil) appeals from a district court's order granting summary judgment to Gough Econ, Inc. (Gough Econ). Because we find no error, we affirm.
 
 
 2
 Nathaniel Daniels instituted a products liability action against NonFluid Oil, alleging that he suffered personal injuries as a result of an allegedly defective air grease gun which was designed, manufactured, and sold by Brown Grease Gun Company (Brown) in 1966. In 1979, thirteen years after the air grease gun was manufactured and sold, Brown sold its assets related to the manufacturing and design of air grease guns to Gough Econ. In the agreement between Brown and Gough Econ, Brown agreed to indemnify Gough Econ for any losses arising from any defects in the design, construction or instructions for the operation of any product made or sold by Brown prior to the closing date.
 
 
 3
 Gough Econ subsequently sold the assets it had acquired from Brown to Non-Fluid Oil pursuant to a Sale and Purchase Agreement (Agreement) in December 1982. The Agreement defined Gough Econ as "Seller" and Non-Fluid Oil as "Purchaser." The Agreement contained a products liability indemnification and hold harmless provision. That section provided, in pertinent part:
 
 
 4
 Seller [Gough Econ] shall indemnify and hold harmless the Purchaser [Non-Fluid Oil] against any claim or losses which the Purchaser may incur insofar as such claim or losses arise out of or are based upon bodily injuries or property damage or otherwise suffered by third parties caused by any defects in the design, construction or instructions for the operation of any product manufactured or sold by the Seller prior to the Closing Date; and will reimburse the Purchaser for any legal and/or other expenses reasonably incurred by it in connection with investigating and defending, any such claims. (emphasis added).
 
 
 5
 Based on this provision, Non-Fluid Oil filed a third-party claim against Gough Econ for indemnification for any liability it might owe to Daniels. Gough answered the third-party complaint, denying liability and alleging that the product Daniels was using at the time of his injuries was not designed, manufactured, or sold by Gough Econ. Gough Econ alleged that the indemnification provision of the Agreement did not afford any basis upon which Non-Fluid Oil would be entitled to indemnity from Gough Econ.
 
 
 6
 Gough Econ moved for summary judgment. The district court concluded that the indemnity provision in the Agreement was plain and unambiguous, and only required Gough Econ to indemnify Non-Fluid Oil for defects in products manufactured or sold by Gough Econ. Accordingly, as the grease gun at issue was manufactured and sold by Brown prior to Gouge Econ's acquisition, the district court granted summary judgment to Gough Econ. Non-Fluid Oil moved for reconsideration, which the district court denied. Non-Fluid Oil then moved for entry of final judgment or for certification for immediate appeal on the indemnity issue. The district court granted the motion and entered judgment in favor of Gough Econ pursuant to Fed. R. Civ. P. 54(b). Non-Fluid Oil timely appealed.
 
 
 7
 We review an award of summary judgment de novo. World-Wide Rights Ltd. Partnership v. Combe Inc., 955 F.2d 242 (4th Cir. 1992). Summary judgment is appropriate where there are no genuine issues as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Our review of the record in this case reveals that the district court properly granted summary judgment to Gough Econ.
 
 
 8
 Because this action was brought in federal district court based on diversity jurisdiction, we look to South Carolina's choice of law provisions to determine which state's law to apply. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that a federal court in a diversity case applies the forum state's choice of law provisions). South Carolina law provides that the parties' agreement as to governing law controls if reasonable. S.C. Code Ann. § 36-1-105(1) (Law. Co-op. Supp. 1992). The Agreement between Gough Econ and NonFluid Oil provides that North Carolina law governs its interpretation. Accordingly, we must look to North Carolina law to resolve this case.*
 
 
 9
 As a general rule, the ordinary rules of contract construction apply to an indemnity provision. Lewis v. Dunn Leasing Corp., 244 S.E.2d 706, 709 (N.C. Ct. App. 1978); Dixie Container Corp. v. Dale, 160 S.E.2d 708, 711 (N.C. 1968). The law regarding the construction of contracts in North Carolina is well-settled. If the language of the contract is clear and unambiguous, the court must interpret the contract as written, and cannot look beyond the terms to see what the parties' intent might have been. Rosania v. Rosania, 422 S.E.2d 348, 350 (N.C. Ct. App. 1992); Asheville Mall, Inc. v. F. W. Woolworth Co., 331 S.E.2d 772, 773-74 (N.C. Ct. App. 1985).
 
 
 10
 Moreover, parties have the right to make their own contracts, and when such contracts are capable of clear interpretation, the court's province is confined to the enforcement of the contract. "Clear and express language of the contract controls its meaning, and neither party may contend for an interpretation at variance with the language on the ground that the writing did not fully express his intent." Olive v. Williams, 257 S.E.2d 90, 93 (N.C. Ct. App. 1979).
 
 
 11
 Applying these principles to the indemnity provision at issue in this case, we find that Non-Fluid Oil is not entitled to indemnity from Gough Econ. The Agreement clearly provided that Gough Econ would be responsible only for injuries and damages caused by defects in the design, construction or instructions for the operation of any product manufactured or sold by it prior to the date that Non-Fluid Oil acquired the assets.
 
 
 12
 Non-Fluid Oil argues that an ambiguity arises from the interpretation of the term "Seller" in this provision. Non-Fluid Oil asserts that "Seller" should include Brown, Gough Econ's predecessor. However, the Agreement specifically defines Gough Econ alone as the "Seller." If the parties had wanted to include Brown in the definition of "Seller", they were free to do so. They did not, however, and the district court correctly refused to change the meaning of that term.
 
 
 13
 Non-Fluid Oil also asserts that because Gough Econ obtained indemnification from Brown for damages caused by equipment manufactured by Brown, Non-Fluid Oil believed that Gough Econ likewise agreed to indemnify Non-Fluid Oil for all losses from equipment placed in the stream of commerce prior to Non-Fluid Oil's purchase of the assets. In effect, Non-Fluid is arguing that despite its plain language, the Agreement does not express Non-Fluid Oil's intent regarding indemnity.
 
 
 14
 North Carolina law clearly provides that, when the language of a contract is plain and unambiguous, a court may not look behind that contract to decipher the parties' intent. Rather, the court must enforce the plain and ordinary meaning of the contract. Asheville Mall, Inc., 331 S.E.2d at 774. Non-Fluid Oil provided no evidence suggesting that the parties intended to include Brown in the definition of "Seller". Both parties are sophisticated commercial entities, and were represented by counsel in drafting the Agreement. Had the parties wanted or intended to include a provision by which Gough Econ was required to indemnify Non-Fluid Oil for losses attributable to products made or sold by Brown, they could have done so.
 
 
 15
 Non-Fluid Oil failed to present a genuine issue of material fact to withstand summary judgment. Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 We note that although the district court relied on the law of South Carolina in deciding this case, our review of the laws of both North Carolina and South Carolina regarding contract interpretation reveals that the same basic legal principles apply in both states. Therefore, although the district court incorrectly relied on South Carolina law, the reasoning and result are the same under North Carolina law