HUNTER, JR., Robert N., Judge,
dissenting.
I dissent from the majority’s opinion concerning Plaintiffs’ appeal and Defendants’ appeal. In my view, Plaintiffs are entitled to partial summary judgment on the issue of liability for breach of contract. I would also hold that the trial court abused its discretion in denying Plaintiffs’ motion for class certification. Finally, I would dismiss Defendants’ appeal concerning attorneys’ fees as interlocutory notwithstanding Defendants’ claim of sovereign immunity. My views with respect to each appeal are addressed separately, in turn.
A. Plaintiffs’ Appeal
1. Summary Judgment on Plaintiffs’ Breach of Contract Claim
Despite the existence of a temporary employment contract between the parties, the incorporation of the Twelve-Month Rule as a condition *104 of that contract, and the admitted violation of the Twelve-Month Rule by Defendants, the trial court below, and the majority here, conclude that no breach of contract has occurred and that Defendants are entitled to summary judgment as a matter of law. I respectfully dissent.
“[The] standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that ‘there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.’ ” In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).
In Sanders II, this Court said that the Twelve-Month Rule “has the effect of law and is incorporated into the employment contract when employees are placed into a temporary assignment.” Sanders II, 197 N.C. App. at 321, 677 S.E.2d at 187. Admissions by Defendants and discovery conducted below establish conclusively that Plaintiffs and thousands of additional state employees were placed in temporary appointments for more than twelve consecutive months with no change in employment status in violation of the Twelve-Month Rule. By doing so, Defendants breached an implied term of the temporary employment contract. See id. at 320, 677 S.E.2d at 187 (stating that “[i]n a breach of contract action, a complainant must show that there is (1) existence of a valid contract, and (2) breach of the terms of that contract.” (internal quotation marks and citation omitted)). Notwithstanding the evident nature of this conclusion, the majority concludes that no breach of contract occurred and affirms summary judgment in favor of Defendants.
Although not addressed by the majority, the trial court concluded that there could have been no breach of contract because “the acts of any hiring official in violating the [Twelve-Month Rule] .. . were clearly ultra vires and would not bind the State.” Thus, the trial court went so far as to conclude that there was no valid contractual relationship between the parties after Plaintiffs had provided twelve months of service, resting its analysis on a defense to the contract’s validity.[1] However, the trial court’s ultra vires argument must fail.
The temporary employment contracts were not ultra vires when they were entered into by the parties. Indeed, to hold otherwise would *105 be to deny Defendants the ability to initially hire anyone for a temporary appointment with the State. Rather, the contract became ultra vires, if at all, because of Defendants breach of the Twelve-Month Rule. In an analogous context, we have stated that, as a general matter,
a municipality cannot be made liable for breach of an express contract for services when the official making the contract has exceeded his or her authority by entering into such a contract. And the city will not ordinarily be estopped to assert the invalidity of a contract made by an officer of limited authority when that authority has been exceeded.
However, such a contract may become binding and enforceable upon the corporation through the doctrine of estoppel based upon the acts or conduct of officers of the corporation having authority to enter into the contract originally, as by receiving the benefits of the contract, or other grounds of equitable estoppel. A municipality cannot escape liability on a contract within its power to make, on the ground that the officers executing it in its behalf were not technically authorized in that regard, where they were proper officers to enter into such contracts.
Pritchard v. Elizabeth City, 81 N.C. App. 543, 553-54, 344 S.E.2d 821, 827 (1986) (internal citations omitted). Thus, there is a critical distinction between the complete absence of authority to enter into a contract and the later improper exercise of existing contractual authority. Here, Defendants had authority to enter into temporary employment contracts with Plaintiffs, but misused that authority in violating the Twelve-Month Rule.[2] Consistent with Pritchard, I would hold that the defense of ultra vires is unavailable to Defendants.
Even so, the majority concludes that even if the contractual relationship between the parties is valid, there has been no breach because Plaintiffs failed to produce any evidence that “Defendants had made *106 any promises or inducements to Plaintiffs to cause them to continue their employment beyond twelve months, other than to continue paying their normal wages,” or “that Defendants had represented to Plaintiffs that their employment status would convert to that of a permanent employee after twelve months of service.” Ante, at _. The majority also notes that “there is nothing in the Commission rules or the relevant law that contractually obligated Defendants to treat Plaintiffs as permanent employees after twelve months of service.” Ante, at _. At this point, I believe the majority mistakes the remedial question (i.e., the valuation of Plaintiffs damages based on Plaintiffs’ expected compensation) with the underlying liability question (i.e., whether a breach of the Twelve-Month Rule occurred). I agree that, at least with respect to the named Plaintiffs, there was never an expectation of permanent employee benefits after Plaintiffs continued in their temporary appointments beyond the twelve month mark. Indeed, the trial court found as fact, unchallenged before this Court, that:
There is no allegation that the benefits sought by Plaintiffs were bargained for, or granted, when Plaintiffs began their employment. In fact, prior to employment in their “temporary appointment” all of the Plaintiffs signed a statement acknowledging the provisions of 25 N.C.A.C. 1C.0405(b). Each of the Plaintiffs indicated in their depositions a desire for continued employment with the State beyond the twelve (12) month mark. Further, there are no allegations of promises or inducements made to Plaintiffs to cause them to continue their employment other than the payment of wages; and no allegations of representations, conduct, or acts of their employers indicating the employment would become permanent.
However, I believe these facts speak to value of Plaintiffs’ expectation interest, not Defendants’ underlying liability for breach of contract. In my view, Plaintiffs are entitled to an award of nominal damages in recognition of the technical injury resulting from Defendants breach of the Twelve-Month Rule.[3] See Cole v. Sorie, 41 N.C. App. 485, 490, 255 S.E.2d 271, 274 (1979) (standing for the proposition that, “in a suit for damages *107 for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least.” (internal quotation marks, citation, and brackets omitted)). Accordingly, I would grant partial summary judgment on the issue of liability for breach of contract in favor of Plaintiffs and remand for a determination of damages.
2. Plaintiffs’ Motion for Class Certification
With respect to the issue of class certification, I also dissent from the majority’s opinion because I would hold that the trial court’s decision to deny Plaintiffs’ motion for class certification is an abuse of discretion.
Rule 23 of the North Carolina Rules of Civil Procedure states, in pertinent part, that “ [i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued.” N.C. R. Civ. P. 23(a). Our Supreme Court has recently explained the law with respect to class certification under Rule 23 as follows:
First, parties seeking to employ the class action procedure pursuant to our Rule 23 must establish the existence of a class. A class exists when each of the members has an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members. The party seeking to bring a class action also bears the burden of demonstrating the existence of other prerequisites:
(1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class; (2) there must be no conflict of interest between the named representatives and members of the class; (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case; (4) class representatives within this jurisdiction will adequately represent members outside the state; (5) class members are so numerous that it is impractical to bring them all before the court; and (6) adequate notice must be given to all members of the class.
When all the prerequisites are met, it is left to the trial court’s discretion whether a class action is superior to *108 other available methods for the adjudication of the controversy. ... The touchstone for appellate review of a Rule 23 order ... is to honor the broad discretion allowed the trial court in all matters pertaining to class certification. Accordingly, we review the trial court’s order denying class certification for abuse of discretion. The test for abuse of discretion is whether a decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision.
Beroth Oil Co. v. N.C. Dep’t of Transp., _ N.C. _, _, 757 S.E.2d 466, 470-71 (2014) (internal quotation marks, citations, brackets, and footnote omitted) (second alteration in original).
Here, Plaintiffs’ motion for class certification defined the putative class as all persons
who have been or currently are employed by the State of North Carolina who are subject to the twelve-month limitation set forth in 25 N.C.A.C. lC.0405(a); and been placed in temporary appointment for more than twelve consecutive months in violation of 25 N.C.A.C. lC.0405(a) during the period of April 1, 2002 through the present; and have not received benefits including paid holidays, vacation leave, sick leave, health benefits, and when applicable, retirement benefits and longevity pay; excluding employees who work less than 20 hours per week and all employees of the sixteen institutions of the University of North Carolina system.
The trial court’s order denying class certification concluded with respect to Plaintiffs’ motion as follows:
The claims of the Plaintiffs and the putative class members have an interest in the same issue of law and fact; that class counsel and the Plaintiff will adequately represent the interests of all class members with no conflict of interest; that they have a genuine interest in the outcome of the action; and that class members are sufficiently numerous that joining them would be impractical. However, these factors do not outweigh the predominant issues affecting individual putative class members which are not capable of application of a general mathematical calculation, but would require extensive individual inquiry concerning *109 class members’ unique employment circumstances (i.e., discussions concerning employment status, requests or promises of benefits, higher pay in lieu of benefits, requests for permanent employment, etc.)[.]
(Emphasis added). Thus, the trial court grounded its decision to deny class certification on the predominance requirement, concluding in effect that no “class” exists under Rule 23. See Beroth, _ N.C. at _, 757 S.E.2d at 470 (“A class exists when each of the members has an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members.”). Accordingly, the question presented to this Court by Plaintiffs’ appeal is whether the trial court abused its discretion in determining that no class existed based on the predominance inquiry. See id. at _, 757 S.E.2d at 470 n.2 (“Therefore, we review the trial court’s determination of whether plaintiffs established the actual existence of a class for abuse of discretion.”).
In my view, the trial court abused its discretion in denying class certification because it conflated the remedial question concerning the calculation of damages with the underlying issue of liability for breach of contract. Specifically, the trial court’s determination that “extensive individual inquiry concerning class members’ unique employment circumstances” would be necessary, including “discussions concerning employment status, requests or promises of benefits, higher pay in lieu of benefits, requests for permanent employment, etc.[,]” is a concern for the expectation value of Plaintiffs’ damages—whether and what each putative class member expected to receive as compensation after the expiration of their twelve-month term. This is wholly separate from the underlying question of contract liability, a question common to all putative class members based on the narrowly defined class articulated by Plaintiffs, the incorporation of the Twelve-Month Rule into each employee’s contract, and the admissions by Defendant that the TwelveMonth Rule was violated.
In Beroth, our Supreme Court stated that differences in the amount of damages owed to putative class members should not preclude class certification as long as the damages inquiry is not determinative of the underlying merits claim. Id. at _, 757 S.E.2d at 475. This generally comports with federal precedent interpreting Fed. R. Civ. P. 23. See generally 2 William B. Rubenstein, Newberg on Glass Actions § 4:54, at 205-10 (5th ed. 2012) (collecting cases and stating that “Courts in every circuit have . . . uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations.”).
*110 Here, the trial court acknowledged that “[t]he claims of the Plaintiffs and the putative class members have an interest in the same issue of law and fact[,]” yet denied class certification because of the possibility of individual damage calculations. Given the aforementioned precedent on this issue, I believe the trial court’s action to be an abuse of discretion. I would certify the proposed class and grant partial summary judgment to Plaintiffs on the issue of liability for breach of contract.
B. Defendants’ Appeal
With respect to Defendants’ appeal of the trial court’s award of attorneys’ fees to Plaintiffs, I agree with the majority that Defendants’ appeal is interlocutory because the actual amount of attorneys’ fees owed by Defendants has yet to be decided. Triad Women’s Ctr., P.A. v. Rogers, 207 N.C. App. 353, 358, 699 S.E.2d 657, 660-61 (2010) (“We, therefore, specifically hold that an appeal from an award of attorneys’ fees may not be brought until the trial court has finally determined the amount to be awarded. For this Court to have jurisdiction over an appeal brought prior to that point, the appellant would have to show that waiting for the final determination on the attorneys’ fees issue would affect a substantial right.”). Furthermore, I also agree that sovereign immunity is a substantial right for purposes of appellate review under N.C. Gen. Stat. § 1-277(a) (2013). Kawai Am. Corp. v. Univ. of North Carolina at Chapel Hill, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002) (“This Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review.” (quotation marks and citation omitted)). However, I do not agree that Defendants are entitled to sovereign immunity in this case and would therefore dismiss Defendants’ appeal in its entirety. Because the majority goes beyond apure jurisdictional analysis and specifically affirms a portion of the trial court’s order concerning attorneys’ fees, I respectfully dissent.[4]
The trial court’s order states that “Defendants are taxed with the costs of this action, including attorney fees as provided by law.” *111 (Emphasis added). As the majority opinion notes, the trial court’s order does not specify the statutory authority for its action. Nevertheless, the parties concede that attorneys’ fees can only be awarded in this case, if at all, pursuant to either N.C. Gen. Stat. § 6-19.1 or § 1-263. Thus, Defendants enjoy the right of sovereign immunity in this case only to the extent that such a claim can shield them from paying out attorney fees under these two statutes. If the doctrine of sovereign immunity does not shield Defendants from paying out attorney fees under the statutes, the trial court’s order cannot “deprive” Defendants of a substantial right nor “work injury” if Defendants are forced to attend another hearing as to the amount owed. See Goldston v. Am. Motors Corp., 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (stating that to meet the substantial right test for appealing interlocutory orders, “the right itself must be substantial and the deprivation of that substantial right must potentially work injury ... if not corrected before appeal from final judgment.”).
N.C. Gen. Stat. § 6-19.1, entitled “Attorney’s fees to parties appealing or defending against agency decision,” provides that if certain prerequisites are met, “the court may, in its discretion, allow the prevailing party to recover reasonable attorney’s fees,... to be taxed as court costs against the appropriate agency[.]” N.C. Gen. Stat. § 6-19.1(a) (2013). Thus, by its express terms, N.C. Gen. Stat. § 6-19.1 allows a party who prevails on an underlying merits claim to recover attorneys’ fees from the State. This is an implicit waiver of any claim that the State has sovereign immunity from paying attorney fees awarded under the statute. See Battle Ridge Cos. v. N.C. Dep’t of Transp., 161 N.C. App. 156, 157, 587 S.E.2d 426, 427 (2003) (“It is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless it has consented by statute to be sued or has otherwise waived its immunity from suit.” (emphasis added)). Accordingly, the defense of sovereign immunity is not available to Defendants under N.C. Gen. Stat. § 6-19.1 and this Court should therefore foreclose any further inquiry under the statute.
N.C. Gen. Stat. § 1-263, entitled “Costs,” provides that “[i]n any proceeding under [the Uniform Declaratory Judgment Act] the court may make such award of costs as may seem equitable and just.” N.C. Gen. Stat. § 1-263. As is evident from the text, the statute does not expressly or impliedly waive the sovereign immunity of the State, and this Court has held that the Uniform Declaratory Judgment Act does not act as a general waiver of the State’s sovereign immunity in declaratory judgment actions. Petroleum Traders Corp. v. State, 190 N.C. App. 542, 546-47, 660 S.E.2d 662, 664 (2008). Nevertheless, it is well-established that the *112 State’s sovereign immunity is waived in “causes of action on contract,” Smith v. State, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976), and this Court has recently interpreted that language to include “declaratory relief actions seeking to ascertain the rights and obligations owed under an alleged contract.” Atl. Coast Conference v. Univ. of Maryland, _ N.C. App. _, _, 751 S.E.2d 612, 621 (2013).
Here, the Plaintiffs’ declaratory judgment motion sought a declaration from the trial court concerning the parties’ temporary employment contracts and the admitted violation of the Twelve-Month Rule. Plaintiffs’ motion, and the trial court’s subsequent order, were responsive to this Court’s disposition in Sanders II when we remanded Plaintiffs’ breach of contract claim with instructions for the trial court to “assess the terms of [Plaintiffs’ contracts with [Defendants at the twelve month and one day mark and beyond” and “to declare [Plaintiffs’ status and rights” under the temporary employment contracts. Sanders II, 197 N.C. App. at 323, 677 S.E.2d at 188-89. Thus, the declaratory relief at issue here concerns the “rights and obligations owed under an alleged contract.” By consequence, and consistent with this Court’s opinion in All. Coast Conference, Defendants cannot assert sovereign immunity to shield themselves from an obligation to pay costs under N.C. Gen. Stat. § 1-263. The defense of sovereign immunity is therefore not available to Defendants under either of the statutes potentially implicated by Defendants’ appeal.
Accordingly, because the defense of sovereign immunity is not available to Defendants under N.C. Gen. Stat. § 6-19.1 or § 1-263,1 would hold that Defendants have failed to meet the substantial right test and that we lack jurisdiction to hear Defendants’ appeal at this time. Although the majority does not engage in a full merits analysis concerning whether the award was proper under N.C. Gen. Stat. § 6-19.1 or § 1-263, the majority errs in affirming a portion of the order. I would dismiss Defendants’ cross-appeal in its entirety as interlocutory.

. Notably, the record in this case is devoid of any contention from Defendants that the actions of their hiring officials constituted ultra vires activity. Defendants’ answer and motion to dismiss, motion for summary judgment, hearing arguments, and brief before this Court make no mention of the ultra vires doctrine or its application to this case. Instead, the doctrine first appears in the trial court’s order.

. In Sanders II, we stated that “if the court below finds defendants automatically converted plaintiffs’ positions from temporary to permanent on their own accord without appropriate classification and budgetary approval, they would have enacted an employment scheme in direct contravention of the state constitution and other sections of the regulatory scheme.” Sanders II, 197 N.C. App. at 322, 677 S.E.2d at 188. Thus, the conclusion that Defendants misused their contractual authority in violating the Twelve-Month Rule has already been reached by this Court and this panel is bound by that decision. In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

. The majority suggests that both parties are in breach of the employment contract, stating, “[h]ere, Defendants ignored the Twelve Month Rule by permitting each Plaintiff to remain employed after twelve months. Likewise, each Plaintiff ignored the Twelve Month Rule by continuing to report to work beyond twelve months of employment.” Ante, at _. However, the Twelve-Month Rule is a constraint on the State, not the employees. I would therefore hold that only Defendants are in breach.

. The majority opinion states that “we review Defendants’ appeal of the Attorneys’ Pees Award only to the extent that their challenge is based on sovereign immunity; however, we dismiss Defendants’ appeal to the extent that Defendants’ challenge is based on some other defense or upon the merits.” Ante, at _. While the majority opinion does not go so far as to decide whether the trial court’s award was proper under either N.C. Gen. Stat. § 6-19.1 or § 1-263, it does decide, and explicitly affirms “the portion of the trial court’s order imposing the Attorneys’ Fees Award ‘as provided by law’ based on the State’s contention concerning its defense of sovereign immunity[.]” Ante, at .